**BACKENROTH FRANKEL & KRINSKY, LLP**
489 5th Avenue
New York, New York  10017
(212) 593-1100
Counsel to the Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                                                      Chapter 11

553 West 174th St LLC,                                          Case No. 11-14968

                              Debtor.
-------------------------------------------------------------x
In re                                                                      Chapter 11

SE Opportunity Fund LP,                                       Case No. 11-14970

                              Debtor.
-------------------------------------------------------------x
STATE OF NEW YORK          )
                                               )ss.:
COUNTY OF NEW YORK    )

Jennifer Miller states under penalty of perjury, as follows:

1. I am the Trustee of the White Oak Profit Sharing Plan, General Partner of SE Opportunity Fund LP and Managing Member of 553 West 174th St. LLC.

2. I submitting this affidavit pursuant to local rule in support of the Debtors' Chapter 11 filings.

3. On October 26, 2011, the Debtors each filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

4. SE owns 100% of the membership interest in 553 West. 553 West owns the real property known as 120 West 74th Street, New York, New York (the "Property"). The Property is a vacant 5 story walk-up apartment building, with 10 residential units.

5. The Debtors estimate that the Property has a $5,500,000 value. This value is based upon purchase offers for the property.

6. Walter Tillow (the "Lender" or the "Mortgagee") asserts a first mortgage claim in the amount of approximately $2,475,000.

7. SE's general unsecured claims total approximately $1,409,000, which includes a $1,382,500 claim in favor of its general partner White Oak Profit Sharing Plan ("White Oak"). 553 West's general unsecured claims total approximately $1,182,630, including a $140,000 of claim in favor of White Oak and a $1,005,000 claim in favor of SE.

8. This case was filed to facilitate the sale of the Property. As described below, the Property is tied up in state court litigation and the Debtors can no longer afford to carry the Property pending the outcome of that litigation.

9. By way of background, 553 West entered into a contract (the "Contract") dated April 20, 2010 to purchase the Property from Walter Tillow. Paragraph 23 of the Rider to

the Contract provided that "the Closing shall take place at the offices of the Seller's counsel at 10:00 a.m. on November 1, 2010, or such other earlier date or such other place as the parties may agree upon." Nothing in the Contract permitted 553 West to unilaterally adjourn the closing. Accordingly, the closing was required to take place on November 1, 2010 in order to avoid the consequences of a default and the loss of the down payment made in connection with the Contract.

10. The Contract also provided that 553 West had the option of taking a purchase money mortgage from the Seller in the amount of $2,500,000.00. This was a very valuable right.

11. Between the time 553 West entered to the Contract with the Seller, and the deadline to close, 553 West retained a broker to market the Property so that 553 West could "flip" it at closing. In early September, 2010, the broker advised 553 West that Bryan Binder was interested in purchasing the Property.

12. Binder wanted to take advantage of the purchase money mortgage offered by the Seller. In order to protect that option, 553 West agreed with Binder that Binder and SE would enter into a Joint Venture Agreement which would allow 553 West, as purchaser, to close under the Contract, and simultaneously allow Binder to purchase one hundred (100%) percent of the interests of 553 West from SE Opportunity, on condition that Binder fund the balance of the

cash due under the terms of the Contract at Closing and the balance of the amount due to the Debtors.

13. Binder and his counsel were put on due notice that the Closing on the Contract would take place on November 1, 2010 at 10:30 a.m. at the 0ffices of Seymour Hurwitz, the Seller's attorney, and that Binder would be required to fund all cash necessary to close the transaction on that date, time and place.

14. In a number of email exchanges, Binder's attorney indicated that Binder would be unable to close at the scheduled closing on Monday, November 1, 2010 10:30 a.m. Accordingly, the Debtors' beneficial owners liquidated certain investments to have the cash necessary for 553 West to close the transaction .

15. Mr. Lazar, Mr. Binder's attorney, appeared at the closing at Mr. Hurwitz' office on November 1, 2010 at approximately 10:00 a.m. without Mr. Binder. He was advised by one of the seller's attorneys, Mark Abrams, Esq., and by 553 West, that the closing would be taking place later that morning. Mr. Lazar did not indicate that Binder was ready to close and did not indicate why he had appeared without his client.

16. Thereafter, Mr. Lazar apparently returned to Mr. Hurwitz' office at approximately 2:30 p.m., again without his client. At that time, 553 West was in the middle of closing on the purchase, since Binder had not appeared with the required cash. Once again, Mr.

Lazar did not state why he had returned to Mr. Hurwitz' office at 2:30 p.m. without Binder. Certainly, he did not come to close the transaction.

17. The closing concluded at approximately 3:00 p.m. After 553 West left Mr. Hurwitz' office, 553 West was advised by Mr. Hurwitz that Mr. Lazar and another member of his firm, Gary Moss, Esq., came to Mr. Hurwitz' office at 4:30 p.m. By that time, however, under the terms of the Joint Venture Agreement, Binder was in default of his obligations. Binder no longer had any right to close.

18. Binder refuses to accept the fact that he missed the deadline to close and thereby lost the deal.

19. Indeed, Binder filed a false and baseless complaint with the New York County District Attorneys' office claiming that Seth Miller, one of the beneficial owners of the Debtors, somehow "conspired" to "steal" Binder's money. This baseless and scurrilous claim was made even though all funds paid by Binder have at all times remained in escrow with Debtors' counsel subject to any order of the Supreme Court or the Bankruptcy Court. Mr. Miller provided the District Attorney with all of the relevant documents and emails. To date, the District Attorney has taken no steps with regard to Binder's reckless complaint and none is expected.

20. More importantly with respect to these cases, Binder filed a complaint in the Supreme Court of New York County. Shortly after the commencement of that action, Binder

made an application by order to show cause seeking an injunction preventing and enjoining the Debtors from "selling, assigning, transferring, encumbering, mortgaging or hypothecating any interest in the [Property]." With the Debtor's consent, on December 8, 2010, the Supreme Court granted the Order to Show Cause. By subsequent order dated January 25, 2011, the Court amended its December 8, 2010 Order by modifying the language therein to read: "selling, assigning, transferring, encumbering, leasing, or mortgaging and hypothecating any interest" in the Property.

21. The Debtors consented to the Order to Show Cause in anticipation of speedy trial of the issues. Having effectively frozen the Debtors, however, it is now ten months later, and Binder refuses to conduct discovery in good faith and has ignored his obligation to respond to the Debtors' discovery demands. This, notwithstanding the fact that the Debtors complied with Binder's discovery demands as of March 2011.

22. In the meantime, the Debtors are incurring approximately $40,000.00 per month in carrying charges, but remain effectively prohibited by order of the Supreme Court from utilizing the Property in a manner that generates any income. In addition, Binder has encumbered the Property with a lis pendens.

23. Mr. Miller is a real estate broker with 30 years' experience and he has been marketing the Property in order to stop the drain on the Debtors' resources, and by extension, the owner's equity in the Property. Towards that end, he has located a prospective buyer that has

agreed to act as a stalking horse for a sale in the Bankruptcy Court, for an all-cash $5,500,000 purchase price that the Debtors believe is fair in this market.

24. The Debtors' Plan, therefore, seeks approval of the sale of the Property, subject to higher and better offers, with all liens claims and encumbrances to attach to the proceeds of sale. In this way, the Property can be sold, creditors paid, and the excess sale proceeds, if any, can be escrowed. Binder can continue to litigate over who is entitled to the sale proceeds without holding the Property hostage and without causing the Debtor to generate large monthly losses. Similarly, by virtue of Binder's breach of contract and his post-closing conduct, SE believes that it has claims against Binder for his $700,000 deposit and a $1,000,000 claim for malicious prosecution, all of which can be resolved post-confirmation.

25. No committee of creditors was previously appointed hereto.

26. The Debtors have not previously filed a Chapter 11 Petition.

27. The schedule of twenty (20) largest non-insider unsecured creditors is annexed to each petition.

28. No shares of stock, debentures or other securities of either of the Debtors or any subsidiary of the Debtors are publicly held.

29. I will be responsible for the Debtors' management during these cases.

Dated: New York, New York
October 26, 2011

**553 West 174th St LLC**

By: s/Jennifer Miller, as Trustee of the White Oak Profit Sharing Plan, General Partner of SE Opportunity Fund LP

**SE Opportunity Fund LP**

By: s/Jennifer Miller, as Trustee of the White Oak Profit Sharing Plan, General Partner of SE Opportunity Fund LP