UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 11 |
| 553 West 174th St LLC, | Case No. 11-14968 |

In re                                 Chapter 11

553 West 174th St LLC,          Case No. 11-14968
                 Debtor.
-------------------------------------------------------------x

In re                                 Chapter 11

SE Opportunity Fund LP,        Case No. 11-14970

                 Debtor.
-------------------------------------------------------------x

## NOTICE OF HEARING

        PLEASE TAKE NOTICE, a hearing will be held on November 29, 2011 at 10 a.m.(the "Hearing") before the Honorable Sean M. Lane, at the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 to consider (a) the application ("Application") of 553 West 174th St. LLC ("553 West") and SE Opportunity Fund LP ('SE," together with 553 West, the "Debtors") for entry of an order substantially in the form annexed hereto, approving their Joint Disclosure Statement under Section 1125 of the Bankruptcy Code and (b) the application of 553 West for approval of the sale procedures annexed to the Plan pursuant to section 363 of the Bankruptcy Code.

        PLEASE TAKE FURTHER NOTICE, that a copies of the Plan and Disclosure Statement are filed with the Clerk of the Bankruptcy Court and is also available upon request of the undersigned.

        PLEASE TAKE FURTHER NOTICE, that objections, if any, must be in writing, served upon the undersigned proposed Debtors' counsel, and filed with the Clerk of the Bankruptcy Court, with a courtesy copy to the Judge Lane's chambers, so as to be received at least seven (7) days prior to the Hearing date.

Dated: New York, New York
      October ___, 2011

                        BACKENROTH FRANKEL & KRINSKY, LLP


                      By:    s/ Mark Frankel
                              489 Fifth Avenue
                              New York, New York 10017
                              (212) 593-1100

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                            Chapter 11

553 West 174ᵗʰ St LLC,                            Case No. 11-14968
                          Debtor.
----------------------------------------------------------x

In re                                            Chapter 11

SE Opportunity Fund LP,                          Case No. 11-14970

                          Debtor.
----------------------------------------------------------x

**ORDER APPROVING DISCLOSURE STATEMENT AND FIXING TIME**
**FOR ACCEPTANCES OR REJECTIONS OF PLAN, COMBINED WITH**
**NOTICE THEREOF**

   A Joint Disclosure Statement ("Disclosure Statement") under chapter 11 of the

Bankruptcy Code having been filed by the above captioned debtors (the "Debtors") on October

_____, 2011, referring to a Joint Plan of Reorganization filed by the Debtors on October ___,

2011 ("Plan"); and it having been determined after hearing on notice that the Disclosure

Statement contains adequate information;

   IT IS ORDERED, and notice is hereby given that:

   A.  The Disclosure Statement is approved.

   B.  _____ ___, 2011 at 5:00 p.m. is fixed as the last day

for submitting written acceptances or rejections to the Plan referred to above, and ballots

indicating acceptance or rejection of the Plan must be received by Backenroth Frankel & Krinsky,

LLP, at its offices located at 489 Fifth Avenue, New York, New York 10017, on or before

_____, 2011 at 5:00 p.m., in order to be counted with regard to

acceptance or rejection of the Plan.

          C.      Within __ days after entry of this order, the Plan, the Disclosure Statement,

and a ballot conforming to Official Form 14, shall be mailed to creditors, equity security holders

and other parties in interest, and shall be transmitted to the United States Trustee as provided in

Fed. R. Bankr. P. 3017(d).

          D.      _____, 2011, at 10:00 a.m., or as soon

thereafter as counsel may heard, is fixed for the hearing on confirmation of the Plan (the

"Hearing"), before the Honorable Sean H. Lane, at the United States Bankruptcy Court, the

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

          E.      The Sale Procedures annexed the Plan as Exhibit B be, and they hereby

are, approved.

          F.      553 West be, and it hereby is, authorized to sell the Property by

conducting an auction at the Hearing in accordance with the Sale Procedures.

          G.      _____, 2011 is fixed as the last day for filing and serving written

objections to the sale and to confirmation of the Plan pursuant to Fed. R. Bankr. p. 3020(b)(1),

which objections must be filed, served and received by the Debtor's attorneys and the Clerk of Court, with a courtesy copy to Judge Lane's chambers, at the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.

H.    The Debtor shall publish the Notice of Sale annexed to the Sale Procedures in a newspaper of general circulation at least twice, at least two weeks before the Confirmation Hearing.

I.    This Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated:      New York, New York
            _____, 2011

            _____
            UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                     Chapter 11

553 West 174th St LLC,                                    Case No. 11-14968

                         Debtor.
---------------------------------------------------------x
In re                                                     Chapter 11

SE Opportunity Fund LP,                                   Case No. 11-14970

                         Debtor.
---------------------------------------------------------x


## MOTION FOR AN ORDER APPROVING JOINT DISCLOSURE STATEMENT AND SALE PROCEDURES


553 West 174th St LLC ("553 West") and SE Opportunity Fund LP ("SE" collectively with 553 West, the "Debtors"), as and for their motion (the "Motion"), pursuant to sections 105(a), 363, 365 and 1125 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (a) approving the Debtors' Disclosure Statement and (b) approving sale procedures (the "Sale Procedures") in connection with the sale of 553 West's real property located at 120 West 74th Street, New York, New York (the "Property") pursuant to the Debtor's Plan of Reorganization, respectfully represents as follows:

## JURISDICTION, VENUE, STATUTORY PREDICATE

1.      The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, 365 and 1125 of the Bankruptcy Code, and Rules 2002, 6004 and 6006 of the Bankruptcy Rules.

## BACKGROUND

2.      On October 26, 2011, the Debtors each filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

3.      SE owns 100% of the membership interest in 553 West.  553 West owns the real property known as 120 West 74th Street, New York, New York (the "Property"). The Property is a vacant 5 story walk-up apartment building, with 10 residential units.

4.      The Debtors estimate that the Property has a $5,500,000 value.  This value is based upon purchase offers for the property.

5.      Walter Tillow (the "Lender" or the "Mortgagee") asserts a first mortgage claim in the amount of approximately $2,475,000.

6.     SE's general unsecured claims total approximately $1,409,000, which includes a $1,382,500 claim in favor of its general partner White Oak Profit Sharing Plan ("White Oak").  553 West's general unsecured claims total approximately $1,182,630, including a $140,000 of claim in favor of White Oak and a $1,005,000 claim in favor of SE.

7.     This case was filed to facilitate the sale of the Property.  As described below, the Property is tied up in state court litigation and the Debtors can no longer afford to carry the Property pending the outcome of that litigation.

8.     By way of background, 553 West entered into a contract (the "Contract") dated April 20, 2010 to purchase the Property from Walter Tillow.  Paragraph 23 of the Rider to the Contract provided that "the Closing shall take place at the offices of the Seller's counsel at 10:00 a.m. on November 1, 2010, or such other earlier date or such other place as the parties may agree upon."  Nothing in the Contract permitted 553 West to unilaterally adjourn the closing.  Accordingly, the closing was required to take place on November 1, 2010 in order to avoid the consequences of a default and the loss of the down payment made in connection with the Contract.

9.     The Contract also provided that 553 West had the option of taking a purchase money mortgage from the Seller in the amount of $2,500,000.00.  This was a very valuable right.

10. Between the time 553 West entered to the Contract with the Seller, and the deadline to close, 553 West retained a broker to market the Property so that 553 West could "flip" it at closing. In early September, 2010, the broker advised 553 West that Bryan Binder was interested in purchasing the Property.

11. Binder wanted to take advantage of the purchase money mortgage offered by the Seller. In order to protect that option, 553 West agreed with Binder that Binder and SE would enter into a Joint Venture Agreement which would allow 553 West, as purchaser, to close under the Contract, and simultaneously allow Binder to purchase one hundred (100%) percent of the interests of 553 West from SE Opportunity, on condition that Binder fund the balance of the cash due under the terms of the Contract at Closing and the balance of the amount due to the Debtors.

12. Binder and his counsel were put on due notice that the Closing on the Contract would take place on November 1, 2010 at 10:30 a.m. at the 0ffices of Seymour Hurwitz, the Seller's attorney, and that Binder would be required to fund all cash necessary to close the transaction on that date, time and place.

13. In a number of email exchanges, Binder's attorney indicated that Binder would be unable to close at the scheduled closing on Monday, November 1, 2010 10:30 a.m.

Accordingly, the Debtors' beneficial owners liquidated certain investments to have the cash necessary for 553 West to close the transaction .

14.     Mr. Lazar, Mr. Binder's attorney, appeared at the closing at Mr. Hurwitz' office on November 1, 2010 at approximately 10:00 a.m. without Mr. Binder. He was advised by one of the seller's attorneys, Mark Abrams, Esq., and by 553 West, that the closing would be taking place later that morning. Mr. Lazar did not indicate that Binder was ready to close and did not indicate why he had appeared without his client.

15.     Thereafter, Mr. Lazar apparently returned to Mr. Hurwitz' office at approximately 2:30 p.m., again without his client. At that time, 553 West was in the middle of closing on the purchase, since Binder had not appeared with the required cash. Once again, Mr. Lazar did not state why he had returned to Mr. Hurwitz' office at 2:30 p.m. without Binder. Certainly, he did not come to close the transaction.

16.     The closing concluded at approximately 3:00 p.m. After 553 West left Mr. Hurwitz' office, 553 West was advised by Mr. Hurwitz that Mr. Lazar and another member of his firm, Gary Moss, Esq., came to Mr. Hurwitz' office at 4:30 p.m. By that time, however, under the terms of the Joint Venture Agreement, Binder was in default of his obligations. Binder no longer had any right to close.

17.     Binder refuses to accept the fact that he missed the deadline to close and thereby lost the deal.

18.     Indeed, Binder filed a false and baseless complaint with the New York County District Attorneys' office claiming that Seth Miller, one of the beneficial owners of the Debtors, somehow "conspired" to "steal" Binder's money.  This baseless and scurrilous claim was made even though all funds paid by Binder have at all times remained in escrow with Debtors' counsel subject to any order of the Supreme Court or the Bankruptcy Court.  Mr. Miller provided the District Attorney with all of the relevant documents and emails. To date, the District Attorney has taken no steps with regard to Binder's reckless complaint and none is expected.

19.     More importantly with respect to these cases, Binder filed a complaint in the Supreme Court of New York County.  Shortly after the commencement of that action, Binder made an application by order to show cause seeking an injunction preventing and enjoining the Debtors from "selling, assigning, transferring, encumbering, mortgaging or hypothecating any interest in the [Property]."  With the Debtor's consent, on December 8, 2010, the Supreme Court granted the Order to Show Cause.  By subsequent order dated January 25, 2011, the Court amended its December 8, 2010 Order by modifying the language therein to read: "selling, assigning, transferring, encumbering, leasing, or mortgaging and hypothecating any interest" in the Property.

20.     The Debtors consented to the Order to Show Cause in anticipation of speedy trial of the issues.  Having effectively frozen the Debtors, however, it is now ten months later, and Binder refuses to conduct discovery in good faith and has ignored his obligation to respond to the Debtors' discovery demands.  This, notwithstanding the fact that the Debtors complied with Binder's discovery demands as of March 2011.

21.     In the meantime, the Debtors are incurring approximately $40,000.00 per month in carrying charges, but remain effectively prohibited by order of the Supreme Court from utilizing the Property in a manner that generates any income.  In addition, Binder has encumbered the Property with a lis pendens.

22.     Mr. Miller is a real estate broker with 30 years' experience and he has been marketing the Property in order to stop the drain on the Debtors' resources, and by extension, the owner's equity in the Property.  Towards that end, he has located a prospective buyer that has agreed to act as a stalking horse for a sale in the Bankruptcy Court, for an all-cash $5,500,000 purchase price that the Debtors believe is fair in this market.

23.     The Debtors' Plan, therefore, seeks approval of the sale of the Property, subject to higher and better offers, with all liens claims and encumbrances to attach to the proceeds of sale.  In this way, the Property can be sold, creditors paid, and the excess sale proceeds, if any, can be escrowed.  Binder can continue to litigate over who is entitled to the sale proceeds without holding the Property hostage and without causing the Debtor to generate large

monthly losses.  Similarly, by virtue of Binder's breach of contract and his post-closing conduct, SE believes that it has claims against Binder for his $700,000 deposit and a $1,000,000 claim for malicious prosecution, all of which can be resolved post-confirmation.

24.     By this Motion, the Debtor seeks approval of its disclosure statement and of the auction procedures annexed as Exhibit B to the Plan so that a sale of the Property can be approved at the confirmation hearing and consummated shortly thereafter.

## AUCTION PROCEDURES

25.     The auction procedures are as follows:

Time and Place of Sale:  The Sale will be held on _____, 2011 at ____ __ m. in Judge Lane's courtroom at the United States Bankruptcy Court, the Alexander Hamilton Custom House, One Bowling Green, New York, New York.

Sale Pursuant to Chapter 11 Plan:  The Seller of the Property is 553 West 174th St LLC (the "Debtor").  The sale shall be conducted pursuant to Bankruptcy Code section 363 and the Debtor's Chapter 11 Plan of Reorganization (the "Plan").

Existing Contract of Sale: 553 West entered into a contract with Adam Berkowitz ("Purchaser"), to purchase the 553 West Property for $5,500,000, a copy of which is annexed to the Debtors' Plan as Exhibit A.  This offer is subject to higher or better all cash offers tendered at the Sale.

<u>Sale free and Clear of Liens</u>:  The Sale of the Property shall be conducted pursuant to the Debtors' Plan of Reorganization free and clear of liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and disbursed under the Plan.

<u>Qualification to Bid</u>:   In order to be qualified to bid on the Property, within seven days prior to the commencement of the Sale, each prospective bidder must deliver to 553 West (a) a bank check in the amount of Two Hundred Sixty-Six Thousand, Seven Hundred Fifty Dollars ($266,750) (the "Qualifying Deposit") payable to "Backenroth Frankel & Krinsky, LLC, as Attorneys for 553 West 174th St LLC," (b) evidence reasonably demonstrating such bidder's ability to consummate a sale on the terms proposed, and (c) a written offer to purchase substantially in the form annexed as Exhibit A to the Plan.  No later than one business day before the Sale, each bidder will be notified by 553 West as to whether 553 West deems such bidder qualified to bid at the Sale.

<u>Bidding</u>: Bidding shall be conducted openly at the Sale in the Bankruptcy Court.  The opening bid shall be $5,550,000.  Minimum bidding increments shall be $25,000.

<u>Successful Bidder Additional Deposit:</u> At the Sale, once a bidder is determined to have made the highest or best bid for the Property at the sale (the "Successful Bidder"), bidding shall be deemed closed and no additional bids will be considered. Within one business day after the Successful Bidder is determined, the Successful Bidder shall be required to increase the Qualifying Deposit to an amount equal to ten percent of the winning bid, which amount shall serve as a good faith

deposit against payment of the purchase price.  At the conclusion of the Sale, the Debtor's counsel will return the Qualifying Deposits to all other bidders.

Hearing if Disputed Sale:  In the event that an issue exists as to which competing bid is higher or better, a hearing will be conducted by the Bankruptcy Court on that issue at the conclusion of the Sale.

Sale Approval Order:  the Confirmation Order confirming the Debtor's Plan shall approve the Sale, and in connection therewith, the Confirmation Order shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the Debtor's sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

<u>Closing</u>:  The Successful Bidder must pay the balance of the Purchase Price for the Property (the difference between the amount of the successful bid and the Qualifying Deposit) to 553 West, by bank check, or wire transfer at the closing of title to the Property (the "Closing").  The Successful Bidder must close title to the Property at a date that is no more than forty-five (45) days after the Order by the Bankruptcy Court approving the Sale becomes final and non-appealable, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely by 553 West.

<u>Transfer Tax:</u>  Under the Plan, pursuant to section 1146(c) Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment including without limitation New York City Real Property Transfer Tax and New York State Documentary Tax.

Damages for Failure to Close:  Time is of the Essence as Against the Successful Bidder and the failure of the Successful Bidder to close for any reason whatsoever (except as otherwise provided below) including its failure to pay the balance of the Purchase Price on the Closing Date, will result in 553 West retaining the deposit as liquidated damages and the termination of the Successful Bidder's right to acquire the Property under these Terms and Conditions of Sale.  The Successful Bidder shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Terms and Conditions of Sale other than 553 West's inability to deliver a bargain and sale deed to the Property.  Expenses incurred by the Successful Bidder, or any competing bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such bidder, and under no circumstances shall 553 West or 553 West's professionals be responsible for, or pay, such expenses.

Backup Bidder:  In the event that the Successful Bidder for the Property fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these terms and conditions of sale, 553 West, at its sole option, shall be authorized to sell the Property to the Second Highest Bidder without any further notice without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as 553 West deems appropriate.  Should the Second Highest Bidder fail to close on

the Property, within such time as the parties may agree but not to exceed thirty (30) days after notice from 553 West to the Second Highest Bidder, 553 West shall be authorized to sell the Property to the next highest or best bidder, without the necessity of any further notice. All bidders will be bound by these Terms and Conditions of Sale, including, without limitation, those items set forth in the paragraphs above, except that the Second Highest Bidder must close within thirty (30) days of notification that his bid is accepted.

No Representations: 553 West and 553 West's professionals have not made and do not make any representations as to the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, or any other matter or thing affecting or related to the Property or the Sale, which might be pertinent to the purchase of the Property, including, without limitation, (i) the current or future real estate tax liability, assessment or valuation of the Property; (ii) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (iii) the compliance or non-compliance of the Property, in its current or any future state, with applicable present or future zoning ordinances or other land use law or regulation, or the ability to obtain a change in the zoning or use, or a variance in respect to the Property; (iv) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city or federal government or institutional lender; (v) the current or future use of the Property; (vi) the present and future condition and operating state of any and all machinery or equipment on the Property and the present or future structural and

physical condition of any building thereon or its suitability for rehabilitation or renovation; (vii) the ownership or state of title of any personal property on the Property; (viii) the presence or absence of any laws, ordinances, rule or regulations issued by any governmental authority, agency or board and any violations thereof; (ix) any present or future issues concerning subdivision or non-subdivision of the Property; or (x) the compliance or non-compliance with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere on the Property.  Each bidder shall be deemed to have agreed and acknowledged that no such representations have been made.  553 West is not liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by 553 West or any real estate broker agent, employee, servant or other person or professional representing or purporting to represent 553 West unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing by 553 West.

As Is Sale: The Property is being sold free and clear of all liens claims and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale.  Furthermore, the Property is being sold "AS IS", "WHERE IS" "WITH ALL FAULTS", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever and subject to, among other things, (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (e) environmental conditions.  By delivering

14

their respective Qualifying Deposits, each bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Property in making its bid. Neither 553 West nor any of its representatives make any representations or warranties with respect to the permissible uses of the Property, including but not limited to, the zoning of the Property. All bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by 553 West or 553 West's professionals.

Deed: 553 West shall convey the Property by delivery of a bargain and sale deed.

Broker: Except as set forth in the contract annexed to the Plan as Exhibit A, neither 553 West nor 553 West's counsel is liable or responsible for the payment of fees of any broker. The Contract with Berkowitz obligates 553 West to cover a $135,000 brokerage expense. That obligation will be a factor in determining the highest and best offer at the Sale.

Conduct of Sale: these Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the Sale of the Property. By making a bid for the Property, all bidders will be required to acknowledge these Terms and Conditions of Sale and agree to be bound by them.

<u>553 West's Failure to Close</u>:  If 553 West is unable to deliver title to the Property in accordance with these Terms and Conditions of Sale for any reason whatsoever or in the event that the Bankruptcy Court refuses to confirm the Debtors' Chapter 11 plan or approve the sale of the Property pursuant to Section 363 of the Bankruptcy Code, 553 West's only obligation will be to refund the Deposit, together with any interest earned thereon, if any, to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against 553 West or 553 West's professionals.

<u>Right to Withdraw Sale</u>:  553 West reserves its right to withdraw the Property from the Sale, either prior or subsequent to the Sale, for any reasonable reason, as 553 West deems necessary or appropriate.

<u>Plan Confirmation</u>:  The Sale of the Property is subject to confirmation of the Debtors' Plan and approval by the Bankruptcy Court.

<u>Breakup Fee</u>:  As provided in the contract (Exhibit A to the Plan) of 553 West to sell the Property to Adam Berkowitz, Mr. Berkowitz shall have be entitled to a "break-up" fee as the "stalking horse" bidder pursuant to the sale procedures for the Property.  The break-up fee (the "Break-Up Fee") shall be $100,000 and shall be paid only if (a)  553 West fails to consummate the sale to Mr. Berkowtiz as a result of the Debtor's acceptance of a competing offer and closing on a sale pursuant to that competing offer or (b) Mr. Berkowitz becomes the purchaser at a price higher than $5,500,000.  No Break-Up Fee shall be payable if Mr. Berkowitz is in breach of his

obligations under his contract with 553 West (Exhibit A to the Plan). The Break-Up Fee shall be paid solely from the proceeds of the competing offer over and above the contract price, and Mr. Berkowitz shall have no other recourse against the Debtors for the Break-Up Fee. The minimum first competing offer at the Auction shall be an amount that is not less than $50,000 over the contract price set forth in Exhibit A to the Plan.

<u>Bankruptcy Court Jurisdiction:</u>  The Bankruptcy Court shall determine any disputes concerning the Sale of the Property.  By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtors' pending cases.

## **<u>BASIS FOR RELIEF REQUESTED</u>**

<u>The Proposed Sale is Being Conducted as Part of the Debtors' Plan</u>

26.     Bankruptcy Code section 1123(b)(4) specifically provides for the sale of a debtor's property under a Chapter 11 Plan.  In this case, the Debtors' plan provides for the Sale of the Property pursuant to section 363 of the Code.

27.     Under Bankruptcy Code section 363(f), a debtor-in-possession may sell property free and clear of any interest in such property of an entity other than the estate only if, among other things:

(a)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b)    such entity consents;

(c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)    such interest is in bona fide dispute; or

(e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

28.    Since Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Property "free and clear" of Liens and Interests.  *See In re Dundee Equity Corp.*, 1992 WL 53743, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *Accord In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 fn.24 (6th Cir. 1991).

29.    In this case, the lien and interest holders will be adequately protected, because their liens and/or interests will attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto.  The purchase price is more than sufficient to pay all creditors in full in cash with interest.

30.    As to Binder, his claim to the Property is subject to bona-fide dispute, as indicated by the pending State Court litigation.

31.     Accordingly, the sale should be approved under Bankruptcy Code section 363(f) pursuant to the Debtors' Chapter 11 Plan.

**NOTICE**

32.     Notice of the Motion has been given to all creditors and parties in interest. The Debtors respectfully submits that such notice is sufficient, and request that this Court find that no further notice of the relief requested herein is required.

**NO PRIOR REQUEST**

33.     No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the Bankruptcy Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: New York, New York
       October 26, 2010

                                    **BACKENROTH FRANKEL & KRINSKY, LLP**
                                    **Proposed Attorneys for Debtor**s


                                    By:     s/Mark Frankel
                                            489 Fifth Avenue
                                            New York, New York 10017
                                            (212) 593-1100